UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **EXPRESS SCRIPTS HOLDING COMPANY,** | ) ) ) | |
| Plaintiff, | ) ) | CASE NO.: 4:13-cv-2520 |
| vs. | ) ) | |
| **JOHN CHEVEDDEN,** | ) ) | |
| Defendant. | ) | |

**EXPRESS SCRIPTS' BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.   Introduction**

Because federal law is clear that information provided to stockholders to solicit their votes must not contain material misrepresentations of fact, companies spend enormous resources ensuring that their proxy materials are factually accurate and comply with extensive regulatory requirements.  Qualified stockholders are permitted to submit proposals, which companies are not permitted to revise or correct, for inclusion in proxy materials.  A company may exclude proposals if they contain materially false or misleading information, but the securities laws provide no assurance that a company will not be sued for excluding a proposal.  This creates a dilemma: a company must either include a proposal that includes material false and misleading information and face a vote based on tainted information, or exclude the proposal and face

liability for doing so.  Express Scripts Holding Company ("Express Scripts") seeks an expedited declaratory judgment because it is facing this dilemma with respect to a proposal submitted by Defendant John Chevedden for inclusion in Express Scripts' 2014 proxy statement (the "2014 Proxy") for its annual stockholder meeting on May 7, 2014 (the "Proposal").  The Proposal contains multiple materially false and misleading statements, and Chevedden has refused to timely withdraw the Proposal, even after Express Scripts pointed out the misstatements and identified publicly-available materials in which he could find information demonstrating the falsity of those misstatements.

As set forth below, Express Scripts is entitled to a declaration that it may properly exclude Chevedden's Proposal.  The proxy rules do not give stockholders *carte blanche* to say anything they would like in proposals.  Indeed, Securities and Exchange Commission ("SEC") Rule 14a-8 ("Rule 14a-8")[1] authorizes a company to exclude a proposal "[i]f the proposal or supporting statement is contrary to any of the [SEC's] proxy rules, including [Rule 14a-9], which prohibits materially false or misleading statements in proxy soliciting materials[.]"  This Court should declare that the Proposal may be properly excluded and judgment should be entered on or before March 5, 2014 so the proxy materials can be finalized in time for the scheduled annual meeting of stockholders.

**II.     Factual Background**

Pursuant to Local Rule 7(E), Express Scripts attaches its Statement of Uncontroverted Material Facts.  The following summary of the facts is drawn from and cites to that Statement ("SF"):

---

[1] See 17 C.F.R. §  240.14a-8, promulgated under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

A.     **Parties**

Express Scripts is a Delaware corporation with its principal office located in St. Louis, Missouri.  SF 1.  Its stock is publicly traded on the Nasdaq Global Select Market.  SF 2.  Express Scripts has scheduled its next annual stockholder meeting for May 7, 2014 in St. Louis.  SF 3. Consistent with the SEC's proxy rules, Express Scripts plans to mail the 2014 Proxy to its stockholders and to make it available over the Internet by no later than March 25, 2014.  SF 4. In order to do this, Express Scripts must finalize the 2014 Proxy by no later than March 17, 2014.  SF 5.  Express Scripts has scheduled a meeting of its Board of Directors for March 5, 2014, at which time the Board is expected to consider for approval the contents of its 2014 Proxy.  SF 6.  The parties have stipulated to an order setting an expedited briefing schedule, which the Court has entered. (ECF Doc. No. 13.)

Defendant John Chevedden is a stockholder of Express Scripts.  SF 7.  He is also well known as a frequent proponent of stockholder proposals, some of which he has submitted despite lacking eligibility to do so, and some of which have been completely unnecessary because the company had already submitted or substantially implemented the proposal.  According to a summary of public proxy filings since 2006 by the nation's largest public companies, Chevedden is known to "repeatedly file common proposals at multiple companies" and is one of the two most prominent individual proponents of stockholder proposals since 2006.  *See* Proxy Monitor Report, "Corporate Governance and Shareholder Activism, Fall 2013," at p. 6.[2]  Multiple

---

[2] A copy of the report may be found at http://www.proxymonitor.org/pdf/pmr_06.pdf.  As indicated in Proxy Monitor's report, "[d]ata in the report are drawn from the Manhattan Institute's publicly available database, ProxyMonitor.org, which collates the Fortune 250 companies' public proxy filings with the Securities and Exchange Commission (SEC), dating back to 2006.  Data for 2013 are current to August 15, at which time 220 of the Fortune 250 companies had filed proxy documents with the SEC and 218 had held their annual meetings." *See* p. 4.  This Court may take judicial notice of the underlying public data.

lawsuits have been filed over the propriety of Chevedden's proposals, as discussed below. Chevedden has previously submitted four stockholder proposals to Express Scripts and Express Scripts, Inc.,[3] one of which was included in the 2012 proxy statement.  SF 8-10.  On the other three occasions, Express Scripts and  Express Scripts, Inc. excluded the proposals in accordance with Rule 14a-8.  SF 11-13.  For example, in 2009, Chevedden was explicitly asked to withdraw a proposal to Express Scripts, Inc. as unnecessary in light of the fact that the company had voluntarily taken all of the actions that were contemplated by the proposal, but he refused to do so, forcing Express Scripts, Inc. to expend substantial time and resources to prepare and submit a no-action letter request to the SEC.  SF 12-13.  The SEC's staff agreed with Express Scripts, Inc. and the proposal was excluded from the proxy materials.  SF 13.

  B.  **The Proposal**

On November 11, 2013, Chevedden submitted his latest proposal to Express Scripts' chairman and chief executive officer, George Paz, seeking adoption of a policy requiring the chairman of its Board to be independent of company management.  SF 14.  In support of the Proposal, Chevedden argued that it should be "favorably evaluated" in light of Express Scripts' current corporate governance performance, which he describes as "clearly improvable."  SF 15. The Proposal cites various supporting facts "as reported in 2013" which are objectively and demonstrably false:

| Chevedden's Statement | Publicly-Available Facts |
|---|---|
| **"In regard to executive pay there was $51 million [sic] George Paz."** SF 16. | George Paz, the current chairman and chief executive officer, received total compensation of $12,754,690 for the year 2012, and $31,581,836 for the combined years 2010-12.  SF 17.  These facts were reported in Express Scripts' 2013 annual proxy statement (the "2013 |

---

[3] In April 2012, Express Scripts, Inc. and Medco Health Solutions, Inc. completed a strategic transaction whereby both companies became wholly-owned subsidiaries of the newly-formed Express Scripts Holding Company.

| | |
|---|---|
| | Proxy"). SF 17.  Mr. Paz's "total realized pay" for the year 2012, which reflects the value of option exercises and stock vested in addition to total compensation (less stock and option awards), was $27,341,417 based on figures fully and correctly disclosed in the 2013 Proxy. SF 18. |
| **"There was no clawback policy to recoup unearned executive pay based on fraud or error."** SF 19. | Express Scripts Inc. adopted a clawback policy in 2011, which became effective in 2012, and which was then adopted by Express Scripts effective April 2, 2012. SF 20.  The clawback policy applies to all of Express Scripts' current and former executive officers, as well as certain other employees who received incentive-based compensation following the effective date of the policy.  SF 20. The clawback policy is described in the 2013 Proxy.  SF 20. |
| **"Mr. Skinner also received our highest negative votes."** SF 21. | This statement refers to Samuel Skinner, a member of Express Scripts' board, whom the Proposal elsewhere criticizes.  At Express Scripts' 2013 annual stockholder meeting, Mr. Skinner received 77,483,497 votes against him (compared to 552,829,601 votes in favor).  Three other directors received a higher number of negative votes.  SF 22.  This was correctly reported in the Form 8-K dated May 14, 2013.  SF 22. |
| **"Express Scripts still had plurality voting.…"** SF 23. | Express Scripts' bylaws require, in uncontested elections, the affirmative vote of a majority of the votes cast to elect a director when a quorum is present.  SF 24.  The bylaws are publicly available and were filed as an exhibit to the Form 8-K filed by Express Scripts on April 2, 2012.  SF 24. |

Each statement is thus not only demonstrably false but also contrary to what was "reported in 2013."  SF 16-24, 38.

Upon receiving the Proposal, Express Scripts reviewed the Proposal and its supporting statement and determined that it contained multiple objective misrepresentations of fact, as described above. SF 25.  On November 14, 2013, Express Scripts sent Chevedden a deficiency letter in which, *inter alia*, it notified Chevedden that the four statements listed above were false and misleading.  SF 26.  Chevedden and Express Scripts exchanged subsequent correspondence

in which Express Scripts pointed out specific publicly-available documents which demonstrated the falsity of his statements and requested that Chevedden withdraw or revise the misstatements. SF 27-31.  Despite these efforts, Chevedden has not withdrawn the Proposal.  SF 32.

After he was served with the Complaint,  Chevedden suggested that he may be willing to modify each of the four statements in question.  SF 34.  However, under Rule 14a-8, the deadline for submitting proposals was November 28, 2013 (SF 35) and  Express Scripts is not compelled to accept proposals or modifications to proposals submitted after that date.  *See infra* p. 12.

As required by Rule 14a-8(j), Express Scripts has notified the SEC of its intent to exclude the Proposal from its 2014 Proxy.  SF 33.

## III.     Argument

Summary judgment should be granted if, upon viewing the facts in the light most favorable to the non-moving party, and giving her or him the benefit of all reasonable inferences, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 364 (8th Cir. 1994).  Here, the undisputed facts show that the Proposal contains materially false and misleading statements of fact, and Express Scripts is therefore entitled to exclude the Proposal from its 2014 Proxy.

### A.     **Expedited Declaratory Relief Is Appropriate Under the Circumstances**.

The Declaratory Judgment Act provides that any federal court, "[i]n a case of actual controversy within its jurisdiction . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  *Maytag Corp. v. International Union*, 687 F.3d 1076, 1081 (8th Cir. 2012).  An actual controversy exists because Express Scripts intends to exclude the Proposal (and has the right to do so, as shown below) while Chevedden, by his repeated refusal to withdraw the

6

Proposal, has maintained that the Proposal is not subject to exclusion.  If Express Scripts were to exclude the Proposal without a declaration from this Court, it would face the threat of adverse action from Chevedden (or potentially others, including the SEC).  Alternatively, if Express Scripts were to include the Proposal, it would lead to stockholder confusion and a tainted vote.  Time is of the essence in light of the deadlines and process required to complete, publish and distribute proxy materials in time for the upcoming annual meeting of stockholders.  Rule 57 provides for expedited resolution of declaratory judgment actions.  Fed. R. Civ. P. 57.

Express Scripts is not the first company to seek relief from the courts with respect to excluding Chevedden's proposals.  *See, e.g., Apache Corp. v. Chevedden*, 696 F.Supp.2d 723 (S.D. Tex. 2010), *KBR Inc. v. Chevedden*, No. 4:11-cv-00196, 2011 WL 1463611 (S.D. Tex. April 4, 2011) *aff'd sub nom* 478 Fed. Appx. 213 (5th Cir. 2012); *Waste Connections, Inc. v. Chevedden*, No. 4:13-cv-00176 (S.D. Tex. June 3, 2013).  In each case, the plaintiff corporation sought a declaration that it could exclude a proposal submitted by Chevedden from its proxy materials pursuant to SEC Rules.  *See Apache*, 696 F.Supp.2d at 724; *KBR*, 2011 WL 1463611, at *1; *Waste Connections*, No. 4:13-cv-00176, ECF Doc. 15 (S.D. Tex. Feb. 22, 2013).  In *Apache,* the court granted Apache's motion for declaratory judgment, holding that the corporation could properly exclude Chevedden's proposal from its proxy materials.  *Apache*, 696 F.Supp.2d at 741.  In *KBR*, the court granted KBR's motion for summary judgment declaring that it could properly exclude Chevedden's proposal from its proxy materials.  *KBR*, 2011 WL 1463611, at *3-4.  The Fifth Circuit Court of Appeals affirmed that judgment. *KBR v. Chevedden*, 478 Fed. Appx. 213, 214 (5th Cir. 2012).  In *Waste Connections*, the plaintiff corporation filed an unopposed motion for summary judgment seeking a declaration that it could exclude a proposal from its proxy materials under Rule 14a-8 on various grounds, including the

substantive ground that it would cause directors to be removed from office before the expiration of their terms.  *See Waste Connections*, No. 4:13-cv-00176, ECF Doc. 15 (S.D. Tex. Feb. 22, 2013).  The court held that Waste Connections had standing to seek the declaratory judgment and granted the plaintiff's unopposed motion for summary judgment.  *See Waste Connections*, No. 4:13-cv-00176, ECF Doc. 32 (S.D. Tex. June 3, 2013).

> **B.** **The Proposal Should Be Excluded.**

SEC Rule 14a-8 provides a mechanism for a company's stockholders to submit proposals to the company, and sets forth the conditions "when a company must include a shareholder's proposal in its proxy statement and identify in its form of proxy when the company holds an annual or special meeting of shareholders."  17 C.F.R. § 240.14a-8.  The rule describes certain eligibility requirements, including a requirement that the proposal be submitted within 120 calendar days before the date of the company's proxy statement in connection with the previous year's annual meeting (in this case, November 28, 2013, as the 2013 Proxy was filed on March 28, 2013).[4]  *See id.* at § 240.14a-8(e)(2).

While a company is generally required to include a proposal that is procedurally proper, there are certain conditions under which a company is permitted to exclude such a proposal.  *See id.* at § 240.14a-8(i).  Relevant to this case is the third condition, Rule 14a-8(i)(3), which reads:

> **(3)** *Violation of proxy rules*:  If the proposal or supporting statement is contrary to any of the Commission's proxy rules, including § 240.14a-9, which prohibits materially false or misleading statements in proxy soliciting materials[.]

*Id.* at § 240.14a-8(i)(3).  The rule expressly refers to Rule 14a-9, which reads in relevant part:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or

---

[4] Express Scripts does not contest that Chevedden was eligible to submit the original Proposal on November 11, 2013 or that it was submitted in a timely fashion.

>oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a-9(a).

The Eighth Circuit has recognized that Rule 14a-9 means what it says: a proxy solicitation cannot be based on misstatements of material fact. *See, e.g., S.E.C. v. Das*, 723 F.3d 943, 953 (8th Cir. 2013) ("Rule 14a-9(a) was promulgated under section 14(a) of the Exchange Act and 'provides that no proxy statement may contain any false or misleading statement or omission with respect to a material fact.'") (quoting *S.E.C. v. Shanahan*, 646 F.3d 536, 546 (8th Cir. 2011)); *In re BankAmerica Corp. Securities Litigation*, 78 F.Supp.2d 976, 988-89 (E.D. Mo. 1999) ("SEC Rule 14a-9 specifically prohibits solicitation of proxies by means of proxy statements which contain false or misleading statements concerning any material fact or omissions of material facts which make any part of the statement misleading."). Other courts are in accord with this controlling Eighth Circuit precedent. *See, e.g., United Paperworkers Intern. Union v. International Paper Co.*, 985 F.2d 1190, 1197-98 (2d Cir. 1993) ("The SEC…promulgated Rule 14a-9 with the goal of preserving for all shareholders who are entitled to vote, not just for those who sponsor proposals, the right to make decisions based on information that is not false or misleading."); *Seinfeld v. O'Connor*, 774 F.Supp.2d 660, 665 (D. Del. 2011) ("Section 14(a) [of the Exchange Act] is a key tool to prevent corporate directors or officers from procuring shareholder approval for transactions through proxy solicitations that contain false or incomplete disclosure of material information.").

The SEC has also made it clear that Rule 14a-9 means what it says when it comes to objectively and demonstrably false statements of fact contained in a stockholder proposal. In

SEC Staff Legal Bulletin No. 14B (Sept. 15, 2004), the SEC stated that "reliance on rule 14a-8(i)(3) to exclude or modify a statement may be appropriate where … the company demonstrates objectively that a factual statement is materially false or misleading ...."  Notably, the SEC staff made this statement in the context of a policy bulletin in which it cautioned companies against excluding proposals on the basis of statements that were merely disputed or unsupported or that represented the proponent's opinions.  While opinions and statements that might spark debate may not be a proper ground for exclusion, *false* statements are not entitled to the same deference.

      The Proposal contains at least four objective and material misrepresentations of fact.  By prominently including them in his one-page supporting statement, Chevedden proves that the statements are important to his targeted effort to obtain votes in favor of his Proposal.  A statement is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *In re BankAmerica Corp. Securities Litig.*, 78 F.Supp.2d at 988-89 (citing *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 384, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).  A fact is considered material "if disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* (citing *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126 (1976)); *see also In re K-tel Intern., Inc. Securities Litigation*, 300 F.3d 881, 897 (8th Cir. 2002) ("Material information is that 'which would have assumed actual significance in the deliberations of the reasonable shareholder.'") (quoting *TSC Indus.*, 426 U.S. at 449).  When viewed in the context of soliciting votes in favor of a proposed corporate governance measure, statements in the proxy materials regarding the company's existing corporate governance practices are important to the stockholder's decision whether to vote in favor of the proposed measure.  Chevedden has endeavored to paint the company's current corporate governance

performance as "clearly improvable," which represents his principal argument in support of the Proposal.  The fact that vast portions of his supporting statement are demonstrably false renders his Proposal materially misleading to stockholders and subject to exclusion.

In addition to being demonstrably false, certain aspects of Chevedden's misstatements in his attempt to cast a negative light on Express Scripts corporate governance could in fact be construed as libelous if published in the company's proxy materials, as Chevedden has demanded.  Rule 14a-9 considers "[m]aterial which directly or indirectly impugns character, integrity or personal reputation, or directly or indirectly makes charges concerning improper, illegal or immoral conduct or associations, without factual foundation" to be misleading (and therefore a proper basis for exclusion under Rule 14a-8).  *See* 17 C.F.R. § 240-14a-9 note b.; *see also* SEC Staff Legal Bulletin 14B (Sept. 15, 2004) (noting view of the SEC's staff that statements falling within the above description render a proposal subject to exclusion).  The accusatory, negative nature of Chevedden's false statements thus further supports exclusion of the Proposal.

While Express Scripts need not demonstrate intent to deceive or even recklessness in order to exclude the Proposal, this factor also militates in favor of exclusion.[5]  The record shows that Chevedden could have avoided this conflict through a modicum of research.  He could have learned the truth regarding his statements simply by reading the proxy statement for the previous year and a Current Report on Form 8-K that speaks directly to one of his misstatements.  *See* SF 38.  He either did not do so or is ignoring what these documents say, even after having the

---

[5] The intent or recklessness of a person making a statement, while not a required element under Rule 14a-8(i)(3), can provide evidence of materiality.  In the context of the materiality of misstatements in financial statements, the SEC's staff has stated that "[w]hile the intent of management does not render a misstatement material, it may provide significant evidence of materiality." SEC Staff Accounting Bulletin No. 99—Materiality (August 12, 1999).

inaccuracies specifically identified by Express Scripts on multiple occasions.  In either event, Chevedden has acted at best recklessly in communicating the objectively inaccurate facts that he contends are relevant to stockholders' consideration of the Proposal.  This sort of recklessness is not without consequences: Express Scripts has been required to spend considerable time and internal resources responding to Chevedden's Proposal, and has had to hire outside counsel in its effort to avoid having to print demonstrably false information in its proxy materials.  *See* SF 37.

Finally, the time has passed for Chevedden to revise his proposal.  The SEC recognizes that the preparation of proxy materials is a careful and time-consuming effort that requires an orderly process.  The SEC staff takes the position that "[i]f a shareholder submits revisions to a proposal after the deadline for receiving proposals under Rule 14a-8(e), the company is not required to accept the revisions."  SEC Staff Legal Bulletin No. 14F at D.2 (Oct. 18, 2011).  The only proposal that is properly before this Court is the original November 11, 2013 Proposal, and Chevedden cannot try to moot the current controversy through untimely partial revisions such as the changes he states he may be willing to make in the letter he attaches to his Answer. Permitting Chevedden to do so would disregard the deadline established in Rule 14a-8, which is designed to give companies adequate time to evaluate and respond to proposals prior to finalizing proxy materials, and would allow proponents to submit proposals without regard to their accuracy, forcing companies to incur disproportionate time and resources to respond to false and misleading submissions.

### C. Only a Court Can Provide Complete Relief to Express Scripts

Chevedden has suggested in his Answer to the Complaint that declaratory judgment should not be granted and that Express Scripts should instead seek a no-action letter from the SEC.   There is no administrative exhaustion requirement here.  Nor does the SEC have primary

jurisdiction over these matters.  To the contrary, the SEC disclaims primary jurisdiction.  The SEC staff's no-action process is informal and non-binding.  *See Apache Corp. v. New York City Employees' Ret. Sys.*, 621 F.Supp.2d 444, 449 n.3 (S.D. Tex. 2008) ("The no-action letter…is an informal response, and does not amount to an official statement of the SEC's views.").  "The [SEC] has consistently regarded the court, and not the agency, as the formal and binding adjudicator of Rule 14a-8's implementation of section 14(a) [of the Securities Exchange Act of 1934]."  *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 424 (D.C. Cir. 1992) (Ginsberg, J.).  The SEC staff typically includes with its responses a notice titled "Division of Corporation Finance Informal Procedures Regarding Shareholder Proposals" which explains, *inter alia*:  "The determinations reached in these no-action letters do not and cannot adjudicate the merits of a company's position with respect to the proposal.  *Only a court such as a U.S. District Court can decide whether a company is obligated to include shareholder proposals in its proxy materials.*"  (emphasis added).[6]

## IV.  Conclusion

For these reasons, the Court should enter an order declaring that Express Scripts may exclude the Proposal from its 2014 Proxy.

Respectfully submitted this 20th day of January, 2014.

                                              BRYAN CAVE LLP

                                              By:  */s/ Jeffrey S. Russell*
                                              Jeffrey S. Russell (#35158)
                                              One Metropolitan Square
                                              Suite 3600
                                              St. Louis, MO 63102

---

[6] A copy of the notice may be found on the SEC's website at http://www.sec.gov/divisions/corpfin/cf-noaction/14a-8-informal-procedures.htm.

      Telephone:  314-259-2000
      Facsimile:  314-259-2020

   a*nd*

John Bielema
Michael Carey
BRYAN CAVE LLP
One Atlantic Center
Fourteenth Floor
1201 W. Peachtree St., NW
Atlanta, GA 30309
Telephone: 404-572-6600
Facsimile: 404-572-6999

Attorneys for Plaintiff
EXPRESS SCRIPTS HOLDING
COMPANY

Certificate of Service

I certify that on January 20, 2013, I electronically transmitted this document to the Clerk of Court using the ECF System, and also served a copy as follows:

Via Federal Express:

John Chevedden
2215 Nelson Avenue, No. 205
Redondo Beach, CA 90278

      By:  */s/ Jeffrey S. Russell*
      Jeffrey S. Russell (#35158)
      One Metropolitan Square
      Suite 3600
      St. Louis, MO 63102
      Telephone:  314-259-2000
      Facsimile:  314-259-2020