UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| EXPRESS SCRIPTS HOLDING COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:13-CV-2520-JAR |
| JOHN CHEVEDDEN, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment. (Doc. No. 17) Plaintiff Express Scripts filed this action against Defendant John Chevedden seeking a declaratory judgment that it is entitled to exclude Chevedden's stockholder proposal from its 2014 proxy materials. Given the time constraints for finalizing those materials before Express Scripts' Board of Directors meeting on March 5, 2014, the parties stipulated to an expedited briefing schedule. (Doc. No. 13) Express Scripts filed its summary judgment motion on January 20, 2014. The motion is fully briefed and ready for disposition.

**Factual background**

On November 11, 2013, Chevedden submitted a stockholder proposal to Express Scripts chairman and chief executive officer, George Paz, seeking adoption of a policy requiring the chairman to be independent of company management. (Plaintiff's Statement of Uncontroverted Material Facts (SOF), Doc. No. 19, ¶ 14) The Proposal's supporting statement states in part:

> "This proposal should also be more favorably evaluated due to our Company's clearly improvable environmental, social and corporate governance performance as reported in 2013." (SOF, ¶ 15)

1

The Proposal further states:

- "In regard to executive pay there was $51 million George Paz." (SOF, ¶ 16)

- "There was no clawback policy to recoup unearned executive pay based on fraud or error." (SOF, ¶ 19)

- "Mr. Skinner also received our highest negative votes," referring to Samuel Skinner, a member of Express Scripts' board. (SOF, ¶ 21)

- "Express Scripts still had plurality voting.…" (SOF, ¶ 23)

On November 14, 2013, Express Scripts sent Chevedden a "deficiency letter" in which, *inter alia*, it notified Chevedden that the four supporting statements listed above were false and misleading and asked him to provide support for, and correct the factual inaccuracies in his statements. Attached to the deficiency letter was a copy of SEC Rule 14a-8 and SEC Staff Legal Bulletin Nos. 14F and 14G. (SOF, ¶ 26) Chevedden disputes that the alleged misstatements were materially misleading. (Doc. No. 21-1, ¶ 1)

On November 15, 2013, Chevedden sent Express Scripts an email responding to the November 14, 2013 letter, and on November 19, 2013, Chevedden sent Express Scripts additional correspondence regarding his ownership of stock. (SOF, ¶ 27)

On December 11, 2013, Express Scripts sent Chevedden a second letter requesting that he correct the statement regarding Mr. Paz and remove the other three statements. Chevedden responded by email on December 12, 2013, that "I will be glad to consider any evidence to the contrary regarding the 4-bullets in the December 11, 2013 letter." (SOF, ¶ 29)

On December 13, 2013, Express Scripts sent an email directing Chevedden to portions of the 2013 Proxy Statement and May 2013 8-K for the truth of the matters addressed in the four misstatements set forth above. Express Scripts noted the deadline for submitting a revised proposal under the securities laws had passed, that it had extended the deadline in this case "out

of respect for the right of our shareholders to submit legitimate proposals," and that due to regulatory and practical timing constraints, it could not extend the date any further. Express Scripts gave Chevedden until December 17, 2013 to submit an updated proposal without any false and misleading statements. (SOF, ¶ 30)

On December 16 and December 17, 2013, Express Scripts and Chevedden exchanged further correspondence regarding the proposal. (SOF, ¶ 31) Express Scripts received no indication from Chevedden that he was withdrawing the proposal. (SOF, ¶ 32)

On December 18, 2013, Express Scripts notified the SEC of its intent to exclude Chevedden's proposal from its 2014 Proxy (SOF, ¶ 33) and filed the instant action. After the filing of the Complaint on December 18, 2013, Chevedden sent correspondence to Express Scripts dated December 30, 2013 stating that in the interest of resolving issues he was willing to make the following adjustments to the four statements in question as follows:

- In regard to executive pay, **according to GMI Analyst (accessed on December 20, 2013),** there was **total realized pay of** $51 million for George Paz.

- There was no company clawback policy to recoup unearned executive pay based on fraud or error **until 2013**.

- Mr. Skinner also received our highest negative votes **in 2011**.

- Express Scripts still had plurality voting until **2012**.

(Doc. No. 16-1)

The time for submitting proposals for Express Scripts' 2014 proxy materials expired on November 28, 2013.[1] (SOF, ¶ 35) Express Scripts extended the deadline for Chevedden to submit a revised proposal to December 17, 2013; however, no revised proposal was submitted.

---

[1] Under Rule 14a-8(e)(2), a qualified stockholder must submit a proposal "not less than 120 calendar days before the date of the company's proxy statement released to shareholders in connection with the previous year's annual meeting." Express Scripts' 2013 proxy statement was dated March 28, 2013; thus the deadline for submitting a proposal fell on November 28, 2013.

**Legal Standard**

Summary judgment should be granted if, upon viewing the facts in the light most favorable to the non-moving party, and giving her or him the benefit of all reasonable inferences, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**Discussion**

This Court's jurisdiction is predicated generally upon 28 U.S.C. § 1331 and specifically upon § 27 of the Securities Exchange Act of 1934 ("SEA"), which gives federal courts exclusive jurisdiction over all suits "brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." Amalgamated Clothing and Textile Workers Union v. Wal-Mart Stores, Inc., 821 F.Supp. 877, 879 (S.D.N.Y. 1993) (quoting 15 U.S.C. § 78aa (West's Supp.1992)).

Congress has delegated the task of regulating proxy solicitations to the SEC. Amalgamated Clothing, 821 F.Supp. at 881-82. Section § 14(a) of the SEA makes it unlawful to solicit proxies in violation of the SEC's rules and regulations, codified at 17 C.F.R. § 240.14a–1, et seq. SEC Rule 14a-8(a) requires a company to include a shareholder's proposal in the company's proxy statement. See 17 C.F.R. § 240.14a-8(a). SEC Rule 14a-8(i)(3) provides that a company may exclude a shareholder proposal if the proposal or its supporting statement is contrary to any of the SEC's proxy rules. At issue in this case is SEC Rule 14a-9, which prohibits materially false or misleading statements in proxy soliciting materials, thereby ensuring that the contents of the proxy statement reflect accurately all the issues that would properly arise at the annual meeting. Amalgamated Clothing, 821 F.Supp. at 882.

The SEC has explicitly stated that "[o]nly a court such as a U.S. District Court can decide whether a company is obligated to include shareholder proposals in its proxy materials." See, www.sec.gov/divisons/corpfin/cf-noaction/14a-8-informaal-procedures.htm. See also, Roosevelt v. E.I. DuPont de Nemours & Co., 958 F.2d 416, 424 (D.C.Cir. 1992) ("The SEC has consistently regarded the court, and not the agency, as the formal and binding adjudicator of Rule 14a-8's implementation of section 14(a).").

A misrepresentation or omission is material if it is substantially likely "that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." In re K-tel Intern., Inc. Securities Litigation, 300 F.3d 881, 897 (8th Cir. 2002) (quoting Basic Inc. v. Levinson, 485 U.S. 224, 231–32 (1988) (citation omitted)). See also TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976) ("Material information is that which "would have assumed actual significance in the deliberations of the reasonable shareholder."). In contrast, a fact is immaterial "[w]here a reasonable investor could not have been swayed" by the misrepresentation. Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 (8th Cir. 1997). Immaterial statements include vague, soft, puffing statements or obvious hyperbole. Id. at 547 (finding a prediction of "significant growth" is immaterial).[2] In many circumstances materiality presents a factual question for a jury to decide; however, where a reasonable juror could determine that the information would have "assumed actual significance in the deliberations of the reasonable investor," materiality can be determined as a matter of law. See Press v. Chemical Investment Services Corp., 166 F.3d 529, 538 (2nd Cir. 1999).

---

[2] Indeed, the SEC cautions against excluding proposals on the basis of statements that are merely disputed or unsupported or that represented the proponent's opinions. See, SEC Staff Legal Bulletin No. 14B (Sept. 15, 2004).

5

Express Scripts frames the issue before the Court as whether it may exercise the remedy provided in SEC Rule 14a-8 and exclude a stockholder proposal which contains untrue statements of material fact. Express Scripts points to cases where other companies sought relief from the courts with respect to Chevedden's proposals. See, e.g., Apache Corp. v. Chevedden, 696 F.Supp.2d 723 (S.D. Tex. 2010) (on corporation's motion for declaratory judgment, court held corporation could properly exclude Chevedden's proposal on grounds that he failed to meet the requirements for showing stock ownership); KBR Inc. v. Chevedden, 2011 WL 1463611 (S.D. Tex. April 4, 2011) aff'd sub nom 478 Fed. Appx. 213 (5th Cir. 2012) (on corporation's motion for summary judgment, court held corporation could properly exclude Chevedden's proposal from its proxy materials for failing to establish stock ownership); Waste Connections, Inc. v. Chevedden, No. 4:13-cv-00176 (S.D. Tex. June 3, 2013) (holding that corporation had standing to seek declaratory judgment and granting summary judgment; corporation permitted to exclude Chevedden's proposal from its proxy materials under Rule 14a-8 on various grounds, including, *inter alia*, that it would cause directors to be removed from office before the expiration of their terms).[3] (Brief in Supp., Doc. No. 18, p. 7)

Express Scripts asserts that the facts cited in Chevedden's proposal are objectively and demonstrably false as evidenced in its public filings. First, he misstates the compensation paid to George Paz, Chairman and CEO, i.e., "there was $51 million [sic] George Paz." Express Scripts references page 42 of its 2013 annual proxy statement, which reported that Paz's total compensation for 2012 was $12,754,690 and $31,581,836, for the combined years 2010-2012. Using the measurement of executive compensation known as "total realized pay" or "realized pay," which does not take into account grant date fair value of equity awards, but does account for value realized upon exercise of options and vesting of certain other equity awards, Mr. Paz's

---

[3] This decision was affirmed in Waste Connections, Inc. v. Chevedden, 2014 WL 554566 (5th Cir. Feb. 13, 2014).

compensation for the year 2012 (based on data fully disclosed in the 2013 Proxy Statement) was $27,341,417. (SOF ¶¶ 17-18)[4]

With respect to Chevedden's statement that "there was no clawback policy to recoup unearned executive pay based on fraud or error," Express Scripts states it adopted a clawback policy in 2011, which became effective on April 2, 2012. The policy applies to all current and former Express Scripts executive officers, as well as certain other employees who received incentive-based compensation following the effective date of the policy. These facts were reported on page 38 of its 2013 Proxy Statement. (SOF, ¶ 20)

Chevedden states "Mr. Skinner also received our highest negative votes." Express Scripts notes that at its 2013 annual stockholder meeting, Mr. Skinner received 77,483,497 votes against as compared with 552,829,601 votes in his favor, and that three other directors received a higher number of negative votes. This fact was reported in a Current Report on Form 8-K dated May 14, 2013. (SOF, ¶ 22)

Finally, with respect to Chevedden's statement that "Express Scripts still had plurality voting," Express Scripts points to its bylaws, which are publicly available and filed as an exhibit to the Form 8-K referenced above. The bylaws require, in uncontested elections, the affirmative vote of a majority of the votes cast to elect a director when a quorum is present. This fact was reported on page 6 of the proxy statement. (SOF, ¶ 24)

Express Scripts argues that Chevedden could have avoided this conflict simply by reading the 2013 Proxy Statement and Current Report on Form 8-K, but did not do so even after Express Scripts specifically identified the inaccuracies. (Brief in Supp., Doc. No. 18, p. 12)

---

[4] Chevedden responds that he calculated Paz's compensation for the year 2011 by valuing his stock options on the date of exercise (by subtracting the price paid to the company on date of exercise from the market value of the stock obtained) rather than on the date of grant, and that the failure to specify his method of calculation is immaterial. (Brief in Opp., Doc. No. 21, p. 10)

7

Chevedden concedes the original text of his proposal had some "technical errors" (Brief in Opp., Doc. No. 21, p. 6), but disputes that the misstatements were material. As discussed above, the general standard of materiality contemplates a showing of a substantial likelihood that under all the circumstances, a reasonable shareholder would consider the omitted facts or misstatements of fact important in deciding how to vote. Chevedden's principal argument in support of his proposal is that Express Scripts' current corporate governance performance is "clearly improvable." Here, when viewed in the context of soliciting votes in favor of a proposed corporate governance measure, statements in the proxy materials regarding the company's existing corporate governance practices are important to the stockholder's decision whether to vote in favor of the proposed measure. (Brief in Supp., Doc. No. 18, p. 10) As such, the Court finds these misstatements are material and, therefore, not in compliance with SEC rules and regulations.

On December 30, 2013, after Express Scripts filed the instant action, Chevedden offered to make "further adjustments" to his proposal "in the interest of resolving issues." (Doc. No. 16-1) Express Scripts maintains the only proposal properly before this Court is the original November 11, 2013 proposal, and that Chevedden cannot try to moot the current controversy through untimely partial revisions, citing SEC Staff Legal Bulletin No. 14F at D.2 (Oct. 18, 2011) ("[i]f a shareholder submits revisions to a proposal after the deadline for receiving proposals under Rule 14a-8(e), the company is not required to accept the revisions."). (Doc. No. 18, p. 12)

It is undisputed that the time for submitting proposals for Express Scripts' 2014 proxy materials expired on November 28, 2013. See, Rule 14a-8(e). (SOF, ¶ 35) Chevedden contends that under SEC procedures and the no-action process, a shareholder may submit revisions to his

proposal, even after the deadline for submitting proposals has passed, citing SEC Staff Bulletin No. 14F D.2. (Defendant's Statement of Uncontroverted Material Facts (DSOF, Doc. No. 21-2, ¶ 14) While this is true, the company is not required to accept the revisions.[5]

Chevedden further asserts that under SEC procedures, a shareholder is permitted to revise his proposal even after the company has submitted a no-action letter request to the Commission alleging false statements. (DSOF, ¶ 15-16) SEC Staff policy statements indicate that this practice concerns proposals that "comply generally with the substantive requirements of Rule 14a-8, but contain some minor defects that could be corrected easily." SEC Staff Legal Bulletin No. 14B B.2. Chevedden's assertion that SEC policy would permit him to revise his statements fails to take into account SEC staff policy statements limiting this practice to minor defects. SEC Staff Legal Bulletin No. 14B B.2. ("We may find it appropriate for companies to exclude the entire proposal, supporting statement, or both as materially false or misleading if a proposal or supporting statement would require detailed and extensive editing in order to bring it into compliance with the proxy rules.")

Even if Chevedden's revised proposal was timely, which it clearly is not, there are still substantial inaccuracies in the revisions to the supporting statement that render the revised proposal subject to exclusion under SEC Rules 14a-8 and 14a-9. Rather than correcting the misstatement about Mr. Paz's compensation, Chevedden reiterates the statement and attributes it to a third party subscription service. In addition, both the clawback and voting policies were

---

[5] In cases where the company does not accept the revisions, it must treat the revised proposal as a second proposal and submit a notice stating its intention to exclude the revised proposal, as required by Rule 14a-8(j). The company's notice may cite Rule 14a-8(e) as the reasons for excluding the revised proposal. If the company does not accept the revisions and intends to exclude the initial proposal, it would also need to submit its reasons for excluding the initial proposal. SEC Staff Legal Bulletin No. 14F D.2.

adopted two years earlier than Chevedden's revisions state. (SOF, ¶¶ 8, 15) These inaccuracies are more than mere "minor defects" that could be corrected easily with minimal editing.

The only Proposal properly before this Court is the original November 11, 2013 proposal. Having found the misstatements in the four supporting statements material and, therefore, not in compliance with SEC rules and regulations, the Court concludes that the criteria for exclusion under SEC Rules 14a-8 and 14a-9 have been met, and grants Express Scripts' motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [17] is **GRANTED**. Express Scripts may properly exclude the Proposal submitted on November 11, 2013 from its proxy materials in accordance with SEC Rules 14a-8 and 14a-9.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 18th day of February, 2014.

_____
JOHN A. ROSS
U.S. DISTRICT JUDGE